HCKQKEEp

```
 1    UNITED STATES DISTRICT COURT
      SOUTHERN DISTRICT OF NEW YORK
 2    ------------------------------x
      UNITED STATES OF AMERICA
 3
                  v.                          17 CR 339 (AJN)
 4                                            Plea
      THERESA KEEFE
 5
                      Defendant
 6    ------------------------------x

 7                                            New York, N.Y.
                                              December 20, 2017
 8                                            2:00 p.m.

 9
      Before:
10
                        HON. ALISON J. NATHAN
11                                      District Judge

12
                           APPEARANCES
13
      JOON H. KIM
14         Acting United States Attorney for the
           Southern District of New York
15    ROBERT SOBELMAN
           Assistant United States Attorney
16
      ZACHARY MARGULIS-OHNUMA LAW OFFICE
17         Attorneys for Defendant
      ZACHARY MARGULIS-OHNUMA
18    ADAM ELEWA

19

20

21

22

23

24

25
```

HCKQKEEp

1          (In open court; case called)

2          THE COURT:  I will take appearances of counsel

3   starting with the government.

4          MR. SOBELMAN:  Robert Sobelman for the United States.

5          Good afternoon, your Honor.

6          THE COURT:  Good afternoon.

7          MR. MARGULIS-OHNUMA:  Zachary Margulis-Ohnuma

8   accompanied by my associate, Adam Elewa.  Seated between us is

9   our client, Theresa Keefe.

10          Good afternoon, your Honor.

11          THE COURT:  Good afternoon, counsel.

12          Good afternoon, Ms. Keefe.

13          Mr. Margulis-Ohnuma, I've been informed your client

14   wishes to plead guilty to the lesser included offense of Count

15   One.  Is that correct?

16          MR. MARGULIS-OHNUMA:  That is correct, your Honor.

17          THE COURT:  Ms. Keefe, before I accept your guilty

18   plea, I'm going to ask you certain questions so that I can

19   establish to my satisfaction that you are pleading guilty

20   because -- you may be seated.  Thank you.  I can be satisfied

21   that you're pleading guilty because you wish to plead guilty

22   and because you are guilty, and not for some other reason, and

23   also to establish that you know what you'll be giving up by

24   pleading guilty.

25          If at any point you don't understand one of my

3

HCKQKEEp

1    questions or if you want time to consult with your lawyer at

2    any time or for any reason, you let me know, and I'll give you

3    as much time as you need.  OK?

4              THE DEFENDANT:  Yes, your Honor.

5              THE COURT:  Ms. Keefe, because I will ask you

6    questions today, I'm going to place you under oath, so I will

7    ask you now to please rise and raise your right hand.

8              (Defendant sworn)

9              THE COURT:  Ms. Keefe, you are now under oath, which

10   means that if you answer any of my questions falsely, you may

11   be prosecuted for the separate crime of perjury.

12             Do you understand that?

13             THE DEFENDANT:  Yes.

14             THE COURT:  What is your full name?

15             THE DEFENDANT:  Theresa Rose Keefe.

16             THE COURT:  Mr. Elewa, can I ask you to move the

17   microphone in front of Ms. Keefe?  Thank you.

18             How old are you, ma'am?

19             THE DEFENDANT:  I am 56 years old.

20             THE COURT:  How far did you go in school?

21             THE DEFENDANT:  Eleventh.

22             THE COURT:  Ever been treated for any type of mental

23   illness?

24             THE DEFENDANT:  No.

25             THE COURT:  Are you now or have you recently been

HCKQKEEp

1    under the care of a psychiatrist?

2              THE DEFENDANT:  I spoke to one.

3              THE COURT:  Was that recently?

4              THE DEFENDANT:  Yes.

5              THE COURT:  Any medication as a result of that

6    consultation?

7              THE DEFENDANT:  I'm on like an anxiety medication, but

8    that's more for pain.  Non-narcotic medication.

9              THE COURT:  Have you taken it recently?

10             THE DEFENDANT:  Yes, last night.

11             THE COURT:  Does it affect in any way your ability to

12   understand what's going on around you?

13             THE DEFENDANT:  No.

14             THE COURT:  Any other medicine, pills, drugs or

15   alcoholic beverages that you've taken in the past two days?

16             THE DEFENDANT:  No.

17             THE COURT:  Have you ever been treated for any type of

18   addiction, including drug or alcohol addiction?

19             THE DEFENDANT:  Yes.

20             THE COURT:  When was that?

21             THE DEFENDANT:  I'm not sure of the year exactly.

22   Maybe around 2008.

23             THE COURT:  For what kind of addiction?

24             THE DEFENDANT:  Cocaine.

25             THE COURT:  Just to confirm again, other than the

HCKQKEEp

```
1   antianxiety medication you've taken, have you taken any drugs,

2   medicine, pills or alcoholic beverages in the past two days?

3                THE DEFENDANT:  No.

4                THE COURT:  Your mind is clear today?

5                THE DEFENDANT:  Yes.

6                THE COURT:  You understand what's happening here

7   today?

8                THE DEFENDANT:  Yes.

9                THE COURT:  Does either counsel have any doubt as to

10  Ms. Keefe's competence to plead at this time?

11               MR. SOBELMAN:  No, your Honor.

12               MR. MARGULIS-OHNUMA:  No, your Honor.

13               THE COURT:  On the basis of Ms. Keefe's responses to

14  my questions, my observations of her demeanor here in court and

15  the representations of counsel, I do find that she is fully

16  competent to enter an informed plea of guilty at this time.

17               Ms. Keefe, I want to confirm again that you received a

18  copy of the indictment in this case.  That's the document that

19  contains the charges against you, and it was labeled at the top

20  17 CR 339.  Did you receive that?

21               THE DEFENDANT:  Yes, your Honor.

22               THE COURT:  And you had an opportunity to read it?

23               THE DEFENDANT:  Yes.

24               THE COURT:  Have you had enough of a chance to discuss

25  with your lawyer the charge to which you intend to plead guilty
```

HCKQKEEp

1      and any possible defenses to that charge?

2                  THE DEFENDANT:  Yes.

3                  THE COURT:  Has your lawyer explained to you the

4      consequences of entering a plea of guilty?

5                  THE DEFENDANT:  Yes.

6                  THE COURT:  Are you satisfied with your lawyer's

7      representation of you?

8                  THE DEFENDANT:  Yes.

9                  THE COURT:  I'm now going to explain certain

10     constitutional rights that you have.  These are rights that you

11     will be giving up if you enter a guilty plea.  Please listen

12     carefully to what I'm about to say.  And, again, if there is

13     anything you don't understand, let me know, and either I or

14     your lawyer will explain the matter more fully.

15                 Under the Constitution and laws of the United States,

16     you have the right to plead not guilty to the charges in the

17     indictment.

18                 Do you understand that?

19                 THE DEFENDANT:  Yes.

20                 THE COURT:  If you did plead not guilty, you'd be

21     entitled to a speedy and public trial by a jury on the charges

22     contained in this indictment.

23                 Do you understand that?

24                 THE DEFENDANT:  Yes.

25                 THE COURT:  At a trial, you would be presumed to be

HCKQKEEp

1    innocent, and the government would be required to prove you

2    guilty by competent evidence beyond a reasonable doubt before

3    you could be found guilty.

4               Do you understand that?

5               THE DEFENDANT:  Yes.

6               THE COURT:  A jury of 12 people would have to agree

7    unanimously that you were guilty, and you would not have to

8    prove that you were innocent if you were to go to trial.

9               Do you understand that?

10              THE DEFENDANT:  Yes.

11              THE COURT:  At that trial and at every stage of your

12   case, you'd be entitled to be represented by a lawyer.  If you

13   couldn't afford a lawyer, one would be appointed at public

14   expense; that is, free of cost to you to represent you.

15              Do you understand that?

16              THE DEFENDANT:  Yes.

17              THE COURT:  During a trial, the witnesses for the

18   government would have to come to court and testify in your

19   presence, and your lawyer could cross-examine the witnesses for

20   the government, object to evidence offered by the government,

21   and offer evidence on your own behalf if you so desired.  You

22   would have the right to have subpoenas issued or other process

23   used to compel witnesses to testify in your defense.

24              Do you understand that?

25              THE DEFENDANT:  Yes.

HCKQKEEp

1          THE COURT:  At a trial although you would have the

2     right to testify if you chose to do so, you would also have the

3     right not to testify.  If you decided not to testify, no one,

4     including the jury, could draw any inference or suggestion of

5     guilt from the fact that you did not testify.

6          Do you understand that?

7          THE DEFENDANT:  Yes.

8          THE COURT:  Do you understand that by pleading guilty,

9     you're giving up your right to seek suppression of any evidence

10    that the government has against you?

11         Do you understand that?

12         THE DEFENDANT:  Yes.

13         THE COURT:  If you were convicted at a trial, you

14    would have the right to appeal that verdict.

15         Do you understand that?

16         THE DEFENDANT:  Yes.

17         THE COURT:  So even now as you're here entering this

18    plea, you do have the right to change your mind, plead not

19    guilty and go to trial on the charges contained in this

20    indictment.

21         Do you understand that?

22         THE DEFENDANT:  Yes.

23         THE COURT:  If you plead guilty and if I accept your

24    plea, you will give up your right to a trial and the other

25    rights I've just discussed other than the right to a lawyer

HCKQKEEp

1   which you have regardless of whether or not you plead guilty.

2   But if you plead guilty, there will be no trial, and I will

3   enter a judgment of guilty, and then at a later date I will

4   sentence you on the basis of your plea after I've considered a

5   presentence report that I will get from the probation

6   department and then whatever submissions I get from your lawyer

7   and from the government.

8          Do you understand that?

9          THE DEFENDANT:  Yes, your Honor.

10         THE COURT:  If you plead guilty, there will be no

11  trial and no appeal with respect to whether you did or did not

12  commit this crime.

13         Do you understand that?

14         THE DEFENDANT:  Yes.

15         THE COURT:  If you do plead guilty, you'll also have

16  to give up your right not to incriminate yourself because I'll

17  ask you questions today about what you did in order to satisfy

18  myself that you are guilty as charged, and you'll have to admit

19  and acknowledge your guilt.

20         Do you understand that?

21         THE DEFENDANT:  Yes.

22         THE COURT:  Ms. Keefe, are you willing to give up your

23  right to a trial and the other rights I've just discussed with

24  you?

25         THE DEFENDANT:  Yes.

HCKQKEEp

| | |
|---|---|
| 1 | THE COURT:  Turning to the charge against you. |
| 2 | Mr. Sobelman, am I correct that the government has |
| 3 | agreed to accept a plea to a lesser included offense of Count |
| 4 | One; specifically, the lesser included offense of participating |
| 5 | in a conspiracy to distribute or possess with intent to |
| 6 | distribute mixtures or substances containing a detectable |
| 7 | amount of heroin in violation of 21 U.S.C., Section 846 and |
| 8 | Section 841(b)(1)(C). |
| 9 | MR. SOBELMAN:  Yes, that's correct, your Honor. |
| 10 | THE COURT:  Thank you. |
| 11 | Ms. Keefe, I've just stated the lesser included |
| 12 | offense.  Did you hear that? |
| 13 | THE DEFENDANT:  Yes, I did. |
| 14 | THE COURT:  And you understand -- well, now what I'm |
| 15 | going to do is I am going to ask the attorney for the |
| 16 | government to state the elements of the offense in question, |
| 17 | and when he's done, I will just ask if you heard him, and that |
| 18 | you understand if you were to go to trial that those are the |
| 19 | elements that the government would have to prove beyond a |
| 20 | reasonable doubt. |
| 21 | Go ahead, Mr. Sobelman. |
| 22 | MR. SOBELMAN:  There are two elements -- I'm sorry, |
| 23 | there's one element. |
| 24 | THE COURT:  This is to the lesser included offense, |
| 25 | correct? |

HCKQKEEp

1          MR. SOBELMAN:  Yes, your Honor.

2          In order to prove the defendant guilty of the lesser

3     included offense of Count One of the indictment, which is a

4     violation of Title 21, United States Code, Sections

5     841(b)(1)(C) and 846, the government would have to prove the

6     following beyond a reasonable doubt:

7          First, that two or more persons agreed to violate the

8     federal narcotics laws; in this case, by agreeing to distribute

9     and possess with intent to distribute mixtures and substances

10    containing a detectable amount of heroin;

11         And, second, that the defendant knowingly and

12    willfully became a member of the conspiracy.

13         In addition, the government would have to show by a

14    preponderance of the evidence that venue is proper in the

15    Southern District of New York.

16         THE COURT:  Ms. Keefe, did you hear the attorney for

17    the government state the elements of the offense?

18         THE DEFENDANT:  Yes, I did, your Honor.

19         THE COURT:  And you do understand if you were to go to

20    trial, those are the elements the government would have to

21    prove beyond a reasonable doubt.

22         Do you understand that?

23         THE DEFENDANT:  Yes.

24         THE COURT:  All right.  Now I'm going to talk to you

25    about the maximum possible penalties you face for this crime.

HCKQKEEp

1    The maximum means the most that could possibly be imposed.  It

2    doesn't mean that is what you will necessarily receive, but you

3    do have to understand that by pleading guilty, you are exposing

4    yourself to the possibility of receiving any combination of

5    punishments up to the maximum that I'm about to describe.

6              Do you understand that?

7              THE DEFENDANT:  Yes.

8              THE COURT:  So first I'm going to talk to you about

9    the maximum possible restrictions on your liberty.  Here, the

10   maximum term of imprisonment for the lesser included offense is

11   20 years.  Do you understand that?

12             THE DEFENDANT:  Yes, your Honor.

13             THE COURT:  And any term of imprisonment for the

14   offense could be followed by a period of supervised release,

15   and here that could be up to a lifetime of supervised release.

16             Do you understand that?

17             THE DEFENDANT:  Yes, your Honor.

18             THE COURT:  Just to pause for a moment on that term

19   supervised release.  That means upon release from prison, you'd

20   be subject to supervision by the probation department, and

21   there would be rules of supervised release that you'd have to

22   follow.  If you were to violate those rules, you can be

23   returned to prison without a jury trial to serve additional

24   time with no credit for time you served in prison as a result

25   of your sentence and no credit for any time spent on post

HCKQKEEp

1    release supervision.

2              Do you understand that?

3              THE DEFENDANT:  Yes, your Honor.

4              THE COURT:  Here, there is actually a mandatory

5    minimum term of three years of supervised release.

6              Do you understand that?

7              THE DEFENDANT:  Yes.

8              THE COURT:  All right.  I want to make sure you

9    understand there is no parole in the federal system, and if

10   you're sentenced to prison, you will not be released early on

11   parole.

12             Do you understand that?

13             THE DEFENDANT:  Yes, your Honor.

14             THE COURT:  In addition to these restrictions on your

15   liberty, the maximum possible punishment also includes certain

16   financial penalties.  Here, the maximum allowable fine is

17   $10 million or twice the gross gain derived from the offense or

18   twice the gross loss to persons other than yourself, whichever

19   is greater.

20             In addition, I can order restitution to any person or

21   entity injured as a result of your criminal conduct.  I can

22   also order you to forfeit all property derived from the offense

23   or used to facilitate the offense.

24             Finally, I must order a mandatory special assessment

25   of $100.

HCKQKEEp

1          Do you understand that what I've just described are

2     the maximum possible financial penalties you face for this

3     crime?

4               THE DEFENDANT:  Yes.

5               THE COURT:  Ms. Keefe, are you a United States

6     citizen?

7               THE DEFENDANT:  Yes.

8               THE COURT:  Do you understand that as a result of your

9     guilty plea, you may lose certain valuable civil rights to the

10    extent that you have them now or could otherwise obtain them

11    now, such as the right to vote, the right to hold public

12    office, the right to serve on a jury, and the right to possess

13    any kind of firearm.  Do you understand that?

14              THE DEFENDANT:  Yes.

15              THE COURT:  Are you serving any other sentence, either

16    state or federal, or being prosecuted in state court for any

17    crime?

18              THE DEFENDANT:  No.

19              THE COURT:  No?  I do want to correct myself on one

20    thing.  I think I said the maximum allowable fine for Count

21    One, not the lesser included offense.  I had said $10 million.

22    In fact, for the lesser included offense, the maximum allowable

23    fine is $1 million.  Do you understand that?

24              THE DEFENDANT:  Yes.

25              THE COURT:  I do want to make sure you understand,

HCKQKEEp

1    Ms. Keefe, that if your lawyer or anyone else has attempted to

2    predict what your sentence will be, that prediction could be

3    wrong.  No one -- not your lawyer, not the government's lawyer,

4    no one -- can give you any assurance of what your sentence will

5    be since I'm going to decide your sentence, and I'm not going

6    do that now.  I'm going to wait until I receive the presentence

7    report that will be prepared by the probation department.

8            I will do my own independent calculation of the

9    sentencing guideline range.  I'll consider it and any possible

10   departures from it and determine what a reasonable sentence is

11   for you based on the sentencing factors that are contained in a

12   statute called 18 U.S.C. Section 3553(a).

13           Do you understand that?

14           THE DEFENDANT:  Yes, your Honor.

15           THE COURT:  You've discussed these issues with your

16   attorney?

17           THE DEFENDANT:  Yes.

18           THE COURT:  Even if your sentence is different from

19   what your lawyer or anyone else has told you it might be, even

20   if it's different from what you expect or that you've entered

21   into with the government in the written plea agreement, you

22   will still be bound by your guilty plea and will not be allowed

23   to withdraw your plea of guilty.  Do you understand that?

24           THE DEFENDANT:  Yes.

25           THE COURT:  I understand there is a written plea

HCKQKEEp

1    agreement entered into between you, your lawyer and the lawyer

2    for the government.  Is that correct?

3              THE DEFENDANT:  Yes.

4              THE COURT:  I have the original plea agreement in

5    front of me at the moment and it's dated December 6, 2017.

6    I'll ask my deputy to mark the original as Court Exhibit 1 and

7    place it in front of Ms. Keefe.

8              Mr. Sobelman, I will ask when we are done discussing

9    it that the government maintain the original in its records,

10   please.

11             MR. SOBELMAN:  We will, your Honor.

12             THE COURT:  Do you have the original in front of you?

13             THE DEFENDANT:  Yes.

14             THE COURT:  On the first page, is it dated November 6,

15   2017?

16             THE DEFENDANT:  Yes.

17             THE COURT:  And is it seven pages long?

18             THE DEFENDANT:  Yes.

19             THE COURT:  On the last page, the seventh page, is

20   that your signature?

21             THE DEFENDANT:  Yes, it is, your Honor.

22             THE COURT:  Did you sign that today?

23             THE DEFENDANT:  Yes.

24             THE COURT:  Did you sign it in the presence of your

25   lawyer?

HCKQKEEp

1          THE DEFENDANT:  Yes.

2          THE COURT:  At some point before you signed the

3  document, did you read it?

4          THE DEFENDANT:  Yes.

5          THE COURT:  Did you discuss it with your lawyer before

6  you signed it?

7          THE DEFENDANT:  Yes.

8          THE COURT:  And you believe you fully understood it

9  before you signed it?

10          THE DEFENDANT:  Yes.

11          THE COURT:  One of the features of your agreement with

12  the government is that you've agreed on the guideline range

13  that applies in this case, that's something called the

14  stipulated guideline range.  Do you understand that?

15          THE DEFENDANT:  Yes.

16          THE COURT:  In your agreement with the government, the

17  stipulated guideline range is 46 to 57 months imprisonment.  Do

18  you see that?

19          THE DEFENDANT:  Yes.

20          THE COURT:  It's important to understand that

21  agreement as to what the calculation is is binding on you and

22  it's binding on the government.  It's not binding on me.  As I

23  said a moment ago, I do have my own obligation to determine the

24  correct guideline range and what the appropriate sentence is in

25  your case.  I'm not saying I'll come up with a range different

HCKQKEEp

1    from the one that you agreed to with the government, but if I

2    do, I will not let you withdraw your plea even if the range I

3    determine is higher than the one that you've agreed to with the

4    government.  Do you understand that?

5              THE DEFENDANT:  Yes.

6              THE COURT:  In your plea agreement, you've waived your

7    right to appeal or otherwise challenge any sentence that is 57

8    months or below.  In other words, if I were to sentence you to

9    57 months or anything less than 57 months, you would have no

10   right to appeal or otherwise try to challenge that sentence.

11   Do you understand that?

12             THE DEFENDANT:  Yes, your Honor.

13             THE COURT:  Counsel, are there any other aspects of

14   the plea agreement that you would like highlighted at this

15   time?

16             MR. MARGULIS-OHNUMA:  No, your Honor.  But just to be

17   clear, the stipulation is as to the offense conduct and not as

18   to the criminal history category, so that is subject to change

19   and could conceivably change the stipulated guidelines range,

20   which is typical in plea agreements in Southern District.

21             THE COURT:  You don't have an -- well, you do have an

22   agreement as to the criminal history category.

23             MR. MARGULIS-OHNUMA:  I don't think so.  It's based on

24   the information now available.

25             THE COURT:  Well, sure, but based on the -- based on

HCKQKEEp

1      the information now available, you agree -- this agreement on

2      page 3 indicates that the Criminal History Category is III, and

3      therefore you've stipulated to a guideline range which takes

4      that category into account of 46 to 57 months imprisonment.

5              MR. MARGULIS-OHNUMA:  It's always been my

6      understanding with the agreements that the stipulation --

7      unless I'm missing some language, that the stipulation goes to

8      Subsection (a) regarding the offense level.

9              THE COURT:  That's a new one to me.

10             MR. SOBELMAN:  Your Honor, I think the -- I agree with

11     the Court's description, and on page 4 in the first paragraph I

12     think makes quite clear that either party may still seek a

13     sentence outside those guidelines, but on the prior page is

14     bound by the calculation.

15             THE COURT:  Yes, of course, you can certainly, you

16     agree -- the agreement allows anyone to seek a variance.

17             MR. SOBELMAN:  In addition, in the second paragraph on

18     page 4, there are, I'm not sure if I'll call them exceptions,

19     but provisions that permit the parties, including the

20     defendant, to present the probation office and the Court with

21     any relevant facts, to make arguments where within the

22     guidelines sentence should be imposed, and to seek an

23     appropriately adjusted guidelines range if it is determined

24     based upon new information that the defendant's criminal

25     history category is different than that set forth above.  And

HCKQKEEp

1   that is in romanette (iii).

2           THE COURT:  Yes, standard language.

3           MR. MARGULIS-OHNUMA:  May I have one moment?  Sorry,

4   the (iii) you just pointed to is on?

5           MR. SOBELMAN:  On page 4 of the agreement.

6           MR. MARGULIS-OHNUMA:  On the first long paragraph?

7           MR. SOBELMAN:  Yes, the second full paragraph on the

8   page.

9           MR. MARGULIS-OHNUMA:  I'm trying to recall, but I

10  think that there was -- that this is not academic with respect

11  to one of the convictions.  I haven't seen any paperwork

12  relating to these convictions or confirmed them in any way.

13  I'm not sure my client remembers each and every one in

14  sufficient detail to trigger these criminal history points.  My

15  understanding of these agreements has always been that, you

16  know, if the probation report came back with different criminal

17  history calculations, we were entitled to challenge that.  So

18  let me just -- and I think here she is right on the cusp

19  between Criminal History Category II and III.

20          So if I could take a moment and try to recall which

21  was the one that could be an issue (Probation report.

22          THE COURT:  Certainly, you should do that, and I think

23  caution is appropriate here because if you have a contention

24  now that she would be in Criminal History Category II based on

25  the information you have rather than III, then I don't think we

HCKQKEEp

1    should go forward with the plea, unless it's what she wants to

2    do with a full knowing and voluntary agreement, but I think you

3    will be bound to the agreement based on all information as it's

4    currently known.

5            MR. MARGULIS-OHNUMA:  Let me just take a minute to

6    assess that.  I apologize.

7            (Counsel confers with defendant)

8            MR. MARGULIS-OHNUMA:  Your Honor, forgive me for the

9    delay.  Based on (iii) in the second paragraph of page 4, I

10   think that's what I was referring to in terms of the ability to

11   challenge this later if there is new information that the

12   criminal history category is different than what is above.  I

13   think based on that, we're prepared to go forward.  If I find

14   paperwork to determine that one of these was not her, I think

15   the government would be open to -- I don't think it would be --

16   it would be something that I would be entitled to raise

17   notwithstanding the stipulation in the prior paragraph.  Just

18   based on that, we are prepared to go forward.

19           THE COURT:  Let's make sure we have a meeting of the

20   minds.  It refers to new information.  So if new information is

21   learned that would impact the accurate calculation of the

22   criminal history, then bringing that information to the

23   attention of probation and the Court I would not think is a

24   breach of the plea agreement.

25           Mr. Sobelman?

HCKQKEEp

1              MR. SOBELMAN:  I agree.

2              THE COURT:  Likewise, if there is an additional prior

3      criminal conviction that counts for points and increases the

4      criminal history category that's not known about at this

5      time -- I mean, frankly, in my experience, that's what normally

6      happens and usually the government says we continue to

7      encourage a sentence within the stipulated guideline range,

8      even though I think technically under this provision that I

9      don't think we have to, but just to be clear, new information

10     allows either side to take a different position as to what the

11     criminal history category is.

12             Is that your understanding, each of you?

13             MR. MARGULIS-OHNUMA:  Yes.

14             MR. SOBELMAN:  Yes, I think it means exactly what it

15     says.

16             THE COURT:  All right.  Ms. Keefe, this issue that we

17     have been discussing, the understanding that I just indicated,

18     is that your understanding as well?

19             THE DEFENDANT:  Yes, your Honor.

20             THE COURT:  Have you had enough time to discuss this

21     question and issue with your lawyer?

22             THE DEFENDANT:  Yes.

23             THE COURT:  And you're prepared to continue?

24             THE DEFENDANT:  Yes.

25             THE COURT:  All right.  Thank you.

HCKQKEEp

1          MR. SOBELMAN:  Your Honor, you had asked were there

2     any other issues.

3          THE COURT:  Yes, anything else you want highlighted?

4          MR. SOBELMAN:  Just one minor point, which is that the

5     government may seek restitution, and I think that hasn't been

6     mentioned.

7          THE COURT:  I did say that -- in listing the potential

8     maximum -- in listing the maximum financial penalties that I

9     could order restitution.

10          MR. SOBELMAN:  Apologies if I missed it.

11          THE COURT:  There is sometimes a specific amount

12     indicated, but you don't have that here.

13          MR. SOBELMAN:  No, your Honor.

14          THE COURT:  Thank you.

15          Anything else you want me to highlight,

16     Mr. Margulis-Ohnuma?

17          MR. MARGULIS-OHNUMA:  No.  Thank you, your Honor.

18          THE COURT:  Ms. Keefe, I want to make sure that this

19     written plea agreement that we've been discussing just now,

20     does that constitute your complete and total understanding of

21     the entire agreement between you and the government?

22          THE DEFENDANT:  Yes, it does, your Honor.

23          THE COURT:  Other than what's written in this

24     agreement, has anyone made any promise to you or offered you

25     any inducement to plead guilty or to sign the agreement?

HCKQKEEp

1          THE DEFENDANT:  No.

2          THE COURT:  Has anyone threatened you or forced you to

3     plead guilty or to sign the plea agreement?

4          THE DEFENDANT:  No.

5          THE COURT:  Has anyone made a promise to you as to

6     what your sentence will be?

7          THE DEFENDANT:  No.

8          THE COURT:  Thank you.

9          Mr. Margulis-Ohnuma, if you would hand to Mr. Sobelman

10    the plea agreement.  Thank you.

11         Ms. Keefe, what I'm going to ask you to do now is to

12    tell me in your own words what you did that makes you believe

13    that you are guilty of the lesser included offense of Count One

14    that we've been discussing.

15         THE DEFENDANT:  In West Haverstraw, New York, I

16    conspiracy to distribute heroin.  I agreed with others to sell

17    heroin.

18         THE COURT:  Counsel, you'll have to help me, where

19    West Haverstraw is, what county?

20         THE DEFENDANT:  That's in Rockland County.

21         THE COURT:  In Rockland.  Thank you.

22         Ms. Keefe, you knew at the time what you were doing

23    was illegal?

24         THE DEFENDANT:  Yes.

25         THE COURT:  Mr. Sobelman, any questions you'd like me

HCKQKEEp

1    to ask?

2              MR. SOBELMAN:  I had difficulty hearing.  Maybe

3    Ms. Keefe stated a time period, but if not, we like to have one

4    established.

5              THE COURT:  I don't think there was a time period.

6              What was the time period that you engaged in the

7    conduct that you described?

8              THE DEFENDANT:  2012 to 2017.

9              THE COURT:  Thank you.

10             Anything else, Mr. Sobelman?

11             MR. SOBELMAN:  No, your Honor.

12             THE COURT:  Ms. Keefe, I note that you were -- in

13   telling me what you did, I think you were reading from a

14   prepared statement.  I appreciate when individuals work on that

15   with their lawyer.  I do want to make sure that you understood

16   what you read to me.

17             THE DEFENDANT:  Yes, I did.

18             THE COURT:  And you accept those words fully as your

19   own?

20             THE DEFENDANT:  Yes.

21             THE COURT:  Mr. Margulis-Ohnuma, do you know of any

22   valid defense that would prevail at trial or any reason why

23   your client should not be permitted to plead guilty?

24             MR. MARGULIS-OHNUMA:  I do not.

25             THE COURT:  And you agree there's a sufficient factual

HCKQKEEp

1   predicate?

2          MR. MARGULIS-OHNUMA:  I do, your Honor.

3          THE COURT:  Mr. Sobelman, I'll ask the government to

4   make a proffer to the Court as to what the evidence would

5   consist of and what it would show with respect to Ms. Keefe if

6   we were to proceed to trial.

7          MR. SOBELMAN:  Your Honor, the evidence would include

8   Title III wire intercepts of phone recordings, phone records,

9   witness testimony, as well as physical evidence obtained

10  through lawful seizures of drugs.

11         The evidence would show that Ms. Keefe agreed with

12  others during the time period aforementioned to possess with

13  intent to distribute heroin.

14         THE COURT:  In a moment I'm going to ask Ms. Keefe for

15  her formal entry of plea.

16         Before I do so, counsel, any reason I should not

17  accept the defendant's plea of guilty?

18         MR. MARGULIS-OHNUMA:  No, your Honor.

19         THE COURT:  Mr. Sobelman?

20         MR. SOBELMAN:  No, your Honor.

21         THE COURT:  Ms. Keefe, based on everything that we've

22  discussed, I'll ask for your formal entry of plea to the lesser

23  included offense of Count One which is laid out in 17 CR 339.

24  How do you plead?

25         THE DEFENDANT:  Guilty, your Honor.

HCKQKEEp

1              THE COURT:  Ms. Keefe, because you acknowledge that

2     you are in fact guilty of the lesser included offense, because

3     I'm satisfied that you know of your rights, including your

4     right to go to trial, and that you are aware of the

5     consequences of your plea, including the sentence which may be

6     imposed, because I find that you are knowingly and voluntarily

7     pleading guilty, I accept your guilty plea and enter a judgment

8     of guilty to Count One of the indictment.

9              I order the preparation of a presentence report .

10             Ms. Keefe, the probation department will want to

11    interview you in connection with that presentence report that I

12    mentioned earlier.

13             Mr. Margulis-Ohnuma, does defense counsel wish to be

14    present for any interview?

15             MR. MARGULIS-OHNUMA:  Yes, your Honor.

16             THE COURT:  I order probation conduct no interview

17    unless counsel is present.

18             Ms. Keefe, if you do choose to speak to the probation

19    department, please make sure that anything you say is truthful

20    and accurate.  I'll read the report carefully, and it's

21    important to me in deciding what sentence to impose.

22             You and your counsel have a right to examine the

23    report and comment on it at the time of sentencing, so I do

24    urge you to read it and discuss it with your lawyer before

25    sentencing.

HCKQKEEp

1          If there are any mistakes in it, please point them out

2    to your lawyer so he can bring them to my attention before

3    sentencing.

4          I propose sentencing to be set for April 2, 2018 at

5    10:00 a.m.

6          MR. MARGULIS-OHNUMA:  One moment, your Honor.  Do you

7    know when Easter is?

8          THE COURT:  I don't.  My deputy is looking, I think.

9    Good Friday is the Friday before that Monday.  Sunday, the 31st

10   is Easter.  It is during Passover though.

11         MR. MARGULIS-OHNUMA:  I wonder if we could do the

12   following week or the week before.  Kids are out of school that

13   week.

14         THE COURT:  Take a look.  April 9 at 10:00 a.m.

15         MR. MARGULIS-OHNUMA:  Thank you very much, your Honor.

16         THE COURT:  Sentencing is set for April 9, 2018 at

17   10:00 a.m.

18         I direct the government to provide the probation

19   officer with its factual statement within seven days.  Defense

20   counsel, please arrange for the defendant to be interviewed by

21   the probation department within the next two weeks.

22         I do refer counsel to my individual rules and

23   practices for criminal cases available on the court's website

24   which contains some rules regarding sentencing submissions.

25         In accordance with those rules, the defense submission

HCKQKEEp

1    is due one week prior to sentencing, and the government

2    submission is due three days prior to sentencing.

3            Defendant shall remain in custody pending sentencing.

4            Counsel, is there anything else I can address at this

5    time?

6            MR. SOBELMAN:  Nothing from the government.

7            MR. MARGULIS-OHNUMA:  Not from the defense.

8            THE COURT:  See everyone in April.  Happy New Year.

9    We're adjourned.

10           (Adjourned)

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25